# UNITED STATES DISTRICT COURT
## SOUTHISN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **ANDREA TUMBLESON** | : | **Case No. 1:23-cv-395** |
| **6314 S. Snowmass Dr.** | : | |
| **Liberty Twp. OH, 45011** | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LAKOTA LOCAL SCHOOL** | : | |
| **DISTRICT** | : | |
| **5572 Princeton Rd.** | : | |
| **Liberty Twp. OH, 45011** | : | |
| | : | |
| **And** | : | |
| | : | |
| **LAKOTA LOCAL SCHOOL** | : | |
| **DISTRICT BOARD** | : | |
| **OF EDUCATION** | : | |
| **5572 Princeton Rd.** | : | |
| **Liberty Twp. OH, 45011** | : | |
| | : | |
| **Defendants.** | : | |

_____

## COMPLAINT AND JURY DEMAND
_____

Now comes Plaintiff Andrea Tumbleson who for her Complaint against Lakota Local School District and Lakota Local School District Board of Education states as follows:

## I. PRELIMINARY STATEMENT

1. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et. seq.,* the Ohio Civil Rights Act, O.R.C. § 4112.02, *et seq,* and the Family Medical Leave Act, ("FMLA"), 29 U.S.C. §2601 *et seq..* Ms. Tumbleson, an employee of Defendant,

alleges that Defendant violated her rights under state and federal law by denying her the use of earned paid leave benefits for leave taken because of her disability.

2.     Ms. Tumbleson seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for his economic injuries, compensatory damages for her non-economic injuries, and punitive damages.  Finally, Ms. Tumbleson seeks payment of her attorney fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

3.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, 42 U.S.C. §12101, *et. seq.*  This Court may assume supplemental jurisdiction over Plaintiff's claims under Ohio law pursuant to 28 U.S.C. § 1367 because her state law claims arise from the same case or controversy as her federal claims.

4.     Venue with this Court is appropriate because the acts complained of herein occurred within the Southern District of Ohio.

## III. ADMINISTRATIVE HISTORY

5.     On or about March 15, 2023, Ms. Tumbleson filed a charge of discrimination (No. 473-2023-01122) with the Equal Employment Opportunity Commission ("EEOC") against Lakota Local School District, alleging disability discrimination. On March 28, 2023, the EEOC issued Ms. Tumbleson a Notice of Right to Sue.

6.     Ms. Tumbleson has timely filed this claim within 90 days of that notice.

## IV. PARTIES

7.     Plaintiff Andrea Tumbleson is a United States citizen and a resident of Liberty Township, Ohio.  Ms. Tumbleson is employed by Lakota Local School District as a teacher.

8.     Defendant Lakota Local School District is a political subdivision located in Butler County, Ohio. The Lakota Local School District is an employer pursuant to 42 U.S.C. §12111 (2), and a Covered Employer pursuant to 29 CFR §824.104.

9.     Defendant Lakota Local School District Board of Education is a political subdivision located in Butler County, Ohio. The Lakota School District Board of Education is an employer pursuant to 42 U.S.C. §12111 (2), and a Covered Employer pursuant to 29 CFR §824.104 that is responsible for the administration and operation of the Lakota Local School District.

## V. STATEMENT OF THE CASE

10.     Lakota Local School District and Lakota Local School District Board of Education (collectively, "Lakota"), hired Ms. Tumbleson in or about August 1997, as an art teacher.

11.     As an art teacher, Ms. Tumbleson is responsible for classroom instruction, preparing lesson plans, grading student work, and coordinating student education with parents and administrators.

12.     Ms. Tumbleson suffers from Usher Syndrome, a genetic disease that causes progressive degeneration of hearing and eyesight, and a condition called retinitis pigmentosa, a disease that causes degeneration of eyesight.

13.     Ms. Tumbleson's Usher Syndrome and retinitis pigmentosa have, at the time of filing this complaint, rendered her legally blind. Furthermore, she requires the use of a cochlear implant to hear.

14.     Ms. Tumbleson's Usher Syndrome and retinitis pigmentosa substantially limit major life activities, including the major life activities of seeing and hearing, and the normal operation of the sensory system.

15.    Ms. Tumbleson's vision and hearing have progressively degenerated since she began her employment with Lakota. Ms. Tumbleson first disclosed her disability to Lakota in or about 2021, when she requested that Lakota install brighter lightbulbs in her classroom to enhance her vision.

16.    Later in 2021, Ms. Tumbleson requested a computer with a larger monitor from Lakota as an accommodation for her degenerating eyesight. After a protracted interactive process, Lakota granted Ms. Tumbleson this accommodation.

17.    In or about August 2022, Ms. Tumbleson contacted Leader Dogs for the Blind ("Leader Dogs"), a non-profit corporation operating out of Rochester Hills, Michigan. Leader Dogs provides service dogs to help blind individuals navigate safely. To this end, Leader Dogs provides training for blind individuals to teach them to use a cane to help navigate, and to teach them to work with their service dog.

18.    The first course on using a cane is approximately one week, meanwhile the more involved training course to pair and train an individual to use a service dog is approximately four weeks long. Both training courses are conducted in-person at Leader Dogs's facility in Rochester Hills, Michigan, and are offered free-of-charge to approved applicants.

19.    Leader Dogs trains a limited number of service dogs each year to work with individuals who are both deaf and blind. Furthermore, to accommodate deaf-blind individuals, Leader Dogs offers separate training sessions specifically for the deaf and blind. Leader Dogs holds two such sessions each year, once in the late spring, and once in the late fall.

20.    In or about September 2022, Ms. Tumbleson applied for and was approved to take Leader Dog's preliminary training course in using a cane to navigate.

21.     Upon learning that she had been approved to take the Leader Dogs' course, Ms. Tumbleson promptly notified Lakota Schools of her need for leave to attend the training in Michigan.

22.     Lakota Schools, in turn, approved Ms. Tumbleson's use of leave, and allowed her to use her accrued sick leave paid time off to attend this the training.

23.     Ms. Tumbleson completed the cane training and applied for a service dog.

24.     In or about January 2023, Ms. Tumbleson learned that Leader Dogs had approved her to receive a service dog and had selected one of the deaf-blind trained dogs for her to pair with.  Because a dog had already been chosen for her, Ms. Tumbleson was scheduled to attend the spring training session, which was to be held during the period from May 6 to May 20, 2023.

25.     Ms. Tumbleson promptly notified her principal that she would be getting a service dog and requested leave for the approximately three weeks of training she would require. Assuming that she would be granted paid sick leave, as she had been previously, Ms. Tumbleson did not make a specific request for paid sick leave on this occasion.

26.     Ms. Tumbleson had, at this point, accrued sufficient paid sick leave to cover the cost for the time to attend the Leader Dog training session.

27.     Ms. Tumbleson's principal communicated her request to Human Resources and notified her that Human Resources needed some "additional information." Specifically, he told Ms. Tumbleson that Human Resources had requested that she justify her need to take leave for this additional level of training.

28.     In response to this request, Ms. Tumbleson prepared detailed information describing her medical condition, the nature and magnitude of her disability, the

necessity of using a service dog to ameliorate the symptoms of her disability, and the importance of a service dog in her ability to perform her essential job duties.

29.    A Human Resources Representative contacted Ms. Tumbleson to discuss her formal request for leave. During this conversation, Ms. Tumbleson again requested that she be permitted to use her accrued paid sick leave to attend the Leader Dogs for the Blind training session.

30.    On or about March 9, 2023, Lakota informed Ms. Tumbleson that it would not permit her to use her accrued sick leave to attend the Leader Dogs for the Blind session. According to Lakota, Ms. Tumbleson was not eligible to use her accrued sick leave because it was contrary to the terms and conditions of the Collective Bargaining Agreement between Lakota and the Teacher's Union and statutory definitions governing use of paid sick leave, which in relevant part, provide for use of sick leave for absence due to personal illness. Lakota also denied Ms. Tumbleson's eligibility for leave under the Family Medical Leave Act.

31.    In response, Ms. Tumbleson submitted that she did, in fact, qualify for sick leave under the statutory and collective bargaining agreement definitions or in the alternative, requested that Lakota permit Ms. Tumbleson to substitute her accrued paid sick leave as a form of accommodation.

32.    Lakota again denied Ms. Tumbleson's request, and left her with the choice of unpaid leave, or forgoing a service dog.

33.    Lakota did not at any time explain why Ms. Tumbleson's medical condition did not qualify, in its view, as a personal illness, nor did it demonstrate any administrative or financial burden that would be imposed upon Lakota by granting Ms. Tumbleson's request.

6

34.    Ultimately, Ms. Tumbleson attended the Leader Dogs for the Blind training from May 6 to May 20, 2023 at her own expense. Lakota did not permit her to use her paid sick leave for this time, and accordingly docked her regular wage and insurance payments.

35.    In denying Ms. Tumbleson sick leave in the manner and for the reasons previously stated, Lakota acted purposefully, intentionally, malicious, and with a callous and deliberate disregard for her rights under federal and state law not be subjected to discrimination on account of her disability.

36.    As a proximate result of the its conduct, as previously described, Ms. Tumbleson suffered financial damages and emotional distress, as well as the denial of her statutory rights to be free from discrimination on account of her disability.

37.    Lakota discriminated against Ms. Tumbleson denying her a reasonable accommodation in the form of permitting her use of her accrued sick leave to attend the Leader Dogs for the Blind training, and by treating her differently than similarly situated employees by denying her use of paid sick leave for a qualifying condition.

38.    Lakota wrongfully denied Ms. Tumbleson's eligibility for FMLA leave, and wrongfully interfered with her right under the FMLA to substitute paid leave for FMLA qualified leave.

### VI. STATEMENT OF THE CLAIMS

### Count 1: Failure to Accommodate
### (42 U.S.C. § 12101 and O.R.C. § 4112.02)

39.    Ms. Tumbleson incorporates paragraphs 1 through 37 as if fully rewritten herein.

40.    Ms. Tumbleson suffers from a disability.

41.    Ms. Tumbleson was otherwise qualified to work for Lakota with a reasonable accommodation.

42.     Lakota Local School District and the Lakota Local School District Board of Education were aware of Ms. Tumbleson's disability.

43.     Ms. Tumbleson requested an accommodation in the form of use of her accrued paid sick leave to attend the Leader Dogs for the Blind Training.

44.     Ms. Tumbleson's requested accommodation would impose no financial or administrative burden of any kind on Lakota.

45.     Lakota denied this accommodation and did not provide an alternative reasonable accommodation.

46.     A causal connection exists between Ms. Tumbleson's disability and the request for accommodation.

47.     As a result of Lakota's illegal actions, Ms. Tumbleson has suffered damages including lost wages and emotional distress.

48.     Lakota acted with malice and a conscious disregard for Ms. Tumbleson's rights under federal law not to be subjected to discrimination in her employment on account of a disability.

### Count 2: Disability Discrimination
### (42 U.S.C. § 12101 and O.R.C. § 4112.02)

49.     Ms. Tumbleson incorporates paragraphs 1 through 47 as if fully rewritten herein.

50.     Ms. Tumbleson suffers from a disability.

51.     Ms. Tumbleson is qualified to perform the essential functions of her position with a reasonable accommodation.

52.     Lakota refused to permit Ms. Tumbleson to use her paid sick leave for a qualifying condition. Lakota held Ms. Tumbleson to a disparate standard than similarly situated employees who were not disabled.

53.    There is a causal connection between Ms. Tumbleson's disability, record of disability, and/or Lakota's perception of her disability, and Lakota's decision to deny Ms. Tumbleson use of paid sick leave.

54.    Upon information and belief, Lakota regularly authorizes use of sick leave benefits for personal illnesses of similarly situated teachers who do not suffer from disabilities, and for that reason treated Ms. Tumbleson less favorably than similarly situated employees.

55.    As a result of Lakota's illegal actions, Ms. Tumbleson has suffered damages including lost wages and emotional distress.

56.    Lakota acted with malice and a conscious disregard for Ms. Tumbleson's rights under federal law not to be subjected to discrimination in her employment on account of a disability.

## Count 3: FMLA Interference
## (29 U.S.C. 2601 and O.R.C. § 4112.02)

57.    Ms. Tumbleson incorporates paragraphs 1 through 55 as if fully rewritten herein.

58.    Ms. Tumbleson was eligible for FMLA leave when she requested paid leave to attend the training.

59.    Ms. Tumbleson was entitled to take leave to attend training to use her service dog due to her Usher Syndrome causing incapacitating blindness and deafness. The leave was to obtain a service dog to ameliorate the symptoms of her disability.

60.    Ms. Tumbleson was entitled to substitute accrued paid leave for FMLA leave.

61.    Lakota refused to permit Ms. Tumbleson to substitute paid leave for unpaid leave.

62.    As a result of Lakota's actions, Ms. Tumbleson has suffered damages including lost wages and other economic harms.

9

63. Lakota acted willfully when it denied Ms. Tumbleson's right under the FMLA to choose to substitute accrued paid leave for FMLA qualified unpaid leave.

## **PRAYER FOR RELIEF**

Wherefore, Andrea Tumbleson demands judgment against Lakota Local School District and Lakota Local School District Board of Education as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Tumbleson in an amount to be determined at trial;

2. An award of compensatory damages for all non-economic damages suffered by Ms. Tumbleson in an amount to be determined at trial;

3. For an award of Ms. Tumbleson's reasonable attorney fees and costs;

4. For an award of any other relief in law or equity to which Ms. Tumbleson is entitled to under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Dennis A. Gleason (OH No. 0099045)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
dgleason@mezibov.com

*Attorneys for Plaintiff Andrea Tumbleson*

**<u>JURY DEMAND</u>**

Plaintiff Andrea Tumbleson demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Marc D. Mezibov

Marc D. Mezibov (OH No. 0019316)