UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANDREA TUMBLESON,

      Plaintiff,

  v.

LAKOTA LOCAL SCHOOL
DISTRICT, et al.,

      Defendants.

Case No. 1:23-cv-395

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Defendants have moved under Federal Rule of Civil Procedure 35 for an order requiring an independent medical examination of Plaintiff Andrea Tumbleson. For the reasons explained below, the Court **GRANTS** Defendants' motion, (Doc. 14), and **ORDERS** Defendants to propose an appropriate mental health examiner for the Court to approve. The Court also **GRANTS** Defendants' Motion to Amend the Case Schedule (Doc. 13) and will set new deadlines, pending the occurrence of the mental exam the Court orders.

## BACKGROUND

Plaintiff Andrea Tumbleson teaches art in the Lakota Local School District (Lakota). (Compl. Doc. 1 ¶ 10, #3). She suffers from Usher Syndrome, a degenerative disease that attacks her vision and hearing, and retinitis pigmentosa, which also impacts her eyesight. (*Id.* ¶ 12, #3). Due to her diseases, Tumbleson is legally blind and relies on a cochlear implant to aid hearing. (*Id.* ¶ 13, #3). In August 2022, she signed up with a nonprofit organization to take a two-part course related to cane use

and service dogs. (*Id.* ¶¶ 17–18, #4). The one-week preliminary course offered training on how to use a cane to navigate. (*Id.* ¶¶ 18, 20, #4–5). The three-week advanced course trained individuals to use a service dog. (*Id.* ¶ 18, #4).

Tumbleson requested to use accrued sick leave to participate in the one-week preliminary course, which Lakota approved. (*Id.* ¶¶ 21–22, #5). After she completed the first course, the nonprofit approved Tumbleson for a service dog. (*Id.* ¶¶ 23–24, #5). This in turn necessitated three-weeks leave to attend the second course. (*Id.*). So she again sought leave. (*Id.* ¶ 25, #5). This time, though, she did not specify paid sick leave, as she assumed that is what Lakota would again grant. (*Id.*). Lakota instead requested additional information from Tumbleson describing her medical condition and justifying her need for leave, which she provided. (*Id.* ¶¶ 27–29, #5–6). Ultimately, Lakota denied her requested leave. (*Id.* ¶¶ 30, 32, #6). Tumbleson thus attended the second training course using unpaid leave. (*Id.* ¶ 34, #7).

Unhappy with that turn of events, Tumbleson sued Defendants Lakota Local School District and Lakota Local School District Board of Education (Defendants). She alleged that she required leave due to her disability, but that Defendants denied her the ability to use paid leave she had accrued, and also wrongfully denied her eligibility for Family and Medical Leave Act (FMLA) leave (which, she says, would have allowed her to use her accrued pay leave for FMLA purposes). (*Id.* ¶¶ 37–38, 40–45, 58–61 #7–9). She further alleged that Defendants routinely allowed persons to use their accrued sick leave for non-disability-related reasons. (*Id.* ¶¶ 37, 50–54, #7–9). Based on that, she brought claims for failure to accommodate and for disability

2

discrimination under the Americans with Disabilities Act (ADA) and Ohio Civil Rights Act (Counts I and II) and a claim for interference under FMLA (Count III). (*Id.* ¶¶ 39–63, #7–10).

Since that time, the parties have nearly completed discovery. At various times during the process, Tumbleson has represented to Defendants that she may call one of her mental health providers, Ruth Schrider, to testify at trial about the nature and extent of Tumbleson's alleged emotional injuries. (Doc. 14-1, #77). Accordingly, Defendants sought to depose Schrider, but it became clear that scheduling difficulties would require modifications to the case calendar for that to happen. (Doc. 13, #64). So the Court held a Telephone Status Conference to discuss the case calendar. (8/30/24 Min. Entry). During that call, another disagreement surfaced. Namely, the parties disputed whether Defendants were entitled to a Federal Rule of Civil Procedure 35 independent medical exam (IME) of Tumbleson to help defend against Schrider's anticipated testimony. (*Id.*; Docs. 14-2, 14-3). As it appeared the parties had not yet fully explored the issue with each other, the Court advised the parties to confer, and, if no agreement resulted, further advised Defendants to file a Rule 35 motion to compel. (8/30/24 Min. Entry). Moreover, as discovery was coming to a close, the Court also ordered that any briefing occur on an expedited schedule. Specifically, if Defendants moved to compel, Tumbleson had ten days to respond, and Defendants had three days to reply. (*Id.*).

Things did not quite work out that way. Defendants moved on September 6, 2024. (Doc. 14). But Tumbleson did not respond until September 25, 2024. (Doc. 15).

3

Defendants replied consistent with the Court's specified schedule. (Doc. 16). With that, the matter is ripe.

## LEGAL STANDARD

Federal Rule of Civil Procedure 35 allows a court to "order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The order "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). And it "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

Rule 35's "in controversy" and "good cause" requirements demand that the party requesting the examination show more than "mere relevance to the case." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Rather, the requesting party must make an affirmative showing "that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists" for ordering the examination. *Id.* The decision to order a physical or mental examination (or not) ultimately "rests within the sound discretion of the Court." *Curatola v. Am. Elec. Power*, No. 1:06-cv-839, 2007 WL 9728954, at *3 (S.D. Ohio Nov. 13, 2007).

## LAW AND ANALYSIS

**A.    Tumbleson Failed to Follow the Court's Expedited Briefing Schedule.**

The Court starts with a procedural matter. As noted above, given impending case deadlines, the Court expressly ordered an expedited briefing schedule on the

IME issue. (8/30/24 Min. Entry). Yet, as Defendants note in their reply, Tumbleson ignored that schedule. (Doc. 16, #92). Her opposition was due September 16, 2024, but she neither filed a brief by that date nor sought an extension. And when she did file her brief, nine days after the deadline, she didn't bother seeking leave of Court to do so. Briefing schedules are not suggestions. Tumbleson's failure to comply is a sufficient basis, in and of itself, to treat her arguments as forfeited and Defendants' motion as unopposed. *See Castleberry v. Neumann L. P.C.*, No. 1:07-cv-856, 2008 WL 5744179, at *5 (W.D. Mich. July 9, 2008). Of course, merely because a motion is unopposed does not mean a court should grant it. But here, Defendants' motion, if unopposed, certainly clears the hurdle of sufficing to show that an IME is warranted. (Indeed, as discussed below, it clears that hurdle even considering the opposition.) So, Tumbleson's failure to timely respond alone provides a sufficient basis for granting the motion.

**B. Even Considering Tumbleson's Response, Schrider's Anticipated Testimony Warrants an IME.**

Beyond that, the Court finds an IME is warranted even considering Tumbleson's opposition. True, a party's mental or physical condition must be "in controversy" before the Court may order an IME, as Tumbleson highlights. (Doc. 15, #83). And "good cause" must exist, as well. But here both conditions are met.

**1. Tumbleson Placed Her Mental Condition "In Controversy" by Intimating That She Will Rely on Schrider's Professional Assessment to Support Her Emotional Distress Claims.**

The Sixth Circuit has yet to directly address what suffices for a party to put her mental condition "in controversy." But several district courts in the Circuit have

5

determined that merely "claiming damages for mental anguish," or asserting "'garden variety' emotional distress" is not enough. *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 379 F. Supp. 3d 669, 672–73 (S.D. Ohio 2019) (cleaned up) (collecting cases). These courts generally go on to suggest, though, that a plaintiff's emotional distress claim rises above "garden variety" if one or more of what some courts call the *Stevenson* factors, and others call the *Turner* factors, exist:

> (1) a tort claim is asserted for intentional infliction or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental health condition is in controversy within the meaning of Rule 35.

*In re E.I. du Pont*, 379 F. Supp. 3d at 673 (quoting *Stevenson v. Stanley Bostitch*, Inc., 201 F.R.D. 551, 554 (N.D. Ga. 2001)); *see also Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995). Here, the parties agree these factors control the analysis; they just disagree as to the outcome they demand. In particular, Tumbleson argues that none of these factors exist here, meaning she has not placed her mental condition in controversy. (Doc. 15, #85–87). The Court is not persuaded.

Start with the factors in Tumbleson's favor. The complaint did not assert a tort claim for intentional or negligent infliction of emotional distress, allege specific mental or psychiatric injuries, nor allege unusually severe emotional distress as the proximate result of Defendants' conduct. And despite Defendants' argument to the contrary, Tumbleson has not conceded that her mental condition is in controversy. So factors one, two, three, and five favor Tumbleson.

6

Factor four, however, tells a different story. As noted, that factor asks whether a plaintiff intends to offer expert testimony to support a claim for emotional distress damages. At bottom, the question is whether the plaintiff will ask the jurors to rely on their own commonsense or instead on someone's medical opinion to assess the extent of the plaintiff's emotional distress. *See Boone v. Saginaw Health Clinic*, PLLC, No. 1:20-cv-12195, 2021 WL 3771872, at *5 (E.D. Mich. Aug. 25, 2021) (collecting cases). If the plaintiff offers a treating provider to testify to his or her diagnostic opinion of the plaintiff's injury, the extent of that injury, or the likely long-term effects of that injury, then the plaintiff is asking the jury to rely on a medical provider's professional assessment to support her claim for damages. *See id.*; *Tang v. City of Seattle*, No. C19-2055, 2020 WL 7714410, at *2 (W.D. Wash. Dec. 29, 2020). And that amounts to "expert testimony" under factor four of the *Stevenson* test. *Quigley v. T-mobile USA, Inc.*, No. 8:21-cv-1200, 2022 WL 3013196, at *3–4 (C.D. Cal. May 26, 2022) ("The fact that these witnesses are not 'retained' makes them no less of an 'expert' for purposes of the [*Stevenson*] analysis."). After all, the underlying purpose of an IME is to "level the playing field." *Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 446 (E.D. Pa. 2001). That means a defendant should not be limited to merely cross-examining a plaintiff's healthcare provider or reviewing a plaintiff's medical records, as those methods may fail to uncover important information about a plaintiff's mental state that could aid the defense. *Crumedy v. XYZ Ins. Co.*, No. 22-4570, 2023 WL 6293867, at *3 (E.D. La. Sept. 27, 2023); *Denny v. Wingspan Portfolio Advisors, LLC*, No. 3:11-cv-1094, 2013 WL 2434572, at *3 (N.D. Tex. June 5, 2013).

Here, Tumbleson has placed her mental condition in controversy by the combination of seeking damages for emotional distress injuries allegedly caused by Defendants' conduct, (Doc. 1 ¶¶ 2, 36, 47, 55, #2, 7–9), and intimating that she will call her treating provider, Schrider,[1] as a trial witness to testify to "the nature and extent of the damages" Tumbleson suffered in that regard, (Doc. 14-1, #77). Indeed, based on information uncovered during discovery,[2] Defendants anticipate Schrider will testify that Defendants' conduct (1) caused Tumbleson to experience certain symptoms, (2) aggravated her preexisting mental health conditions, and (3) will have future mental health consequences. (Doc. 14, #68). And importantly, Tumbleson does not dispute that characterization of the expected testimony. (Doc. 15, #85 ("[T]he letter does contain an accurate description of Ms. Schrider's anticipated testimony.")). Against that backdrop, an IME will allow Defendants to "adduce facts relevant to the existence and extent of" Tumbleson's alleged emotional distress. *Crumedy*, 2023 WL 6293867, at *5. And that will "level the playing field, in accordance with Rule 35." *Id.* (internal quotation marks omitted).

To be sure, if Defendants had sought an IME that involved an invasive physical exam, that may well be a different story. But the psychiatric exam that Defendants seek does not rise to the level of invasiveness that would tip the scales against

---

[1] Schrider holds a Master of Social Work (MSW) and is a Licensed Independent Social Worker with Supervision Designation (LISW-S). (Doc. 15, #84). The parties refer to her both as Tumbleson's treating social worker, (Doc. 14, #69), and treating psychotherapist, (Doc. 15, #84). No matter which title applies, the Rule 35 analysis remains the same.

[2] Schrider apparently emailed a letter to Tumbleson's counsel describing Schrider's opinions of Tumbleson's mental health condition, which Defendants learned about during discovery. (Doc. 14, #68; Doc. 15, #84–85). Citing confidentiality concerns, neither side provided the letter to the Court. (Doc. 14, #68).

8

granting an IME. Nor, to be clear, is the Court suggesting that a treating provider's testimony will *always* amount to "expert testimony" under *Stevenson*'s fourth factor. But Schrider's anticipated testimony in this case crosses into that territory under Rule 35 because it represents her diagnostic opinion about the scope of Tumbleson's emotional injuries and their likely future course.

One more point. Both parties seek to lure the Court's Rule 35 analysis into Rule 26(a)(2)'s realm. They argue that whether Schrider does or does not qualify as an expert as to whom a report is required under the latter rule controls whether she counts as an expert for purposes of the former rule (i.e., under *Stevenson*'s fourth factor). (Doc. 14, #70–72; Doc. 15, #86–87). Some courts have admittedly suggested that may be the case. But the Court is not convinced. Although Rules 26 and 35 both pertain to discovery, they pursue different objectives. Rule 26's expert-report requirement is designed to ensure disclosure of the substance of expert opinions prepared for a trial. *See* Fed. R. Civ. P. 26(a)(2)(B) (imposing a written report obligation on witnesses who are "retained or specially employed to provide expert testimony in the case"). Rule 35, by contrast, is designed to level the playing field when a party's physical or mental condition is "in controversy." So if one party intends to offer a health care professional to substantiate that party's emotional harm by testifying about diagnoses and prognoses, a level playing field calls for the other party to have access to an IME to attack the testimony. The Court is therefore not persuaded that *Stevenson*'s fourth factor precisely follows the contours that Rule 26(a)(2) case law draws between a medical professional appearing solely as a treating

9

physician (in which case no report is required) versus as an expert (in which case a report *is* required). *See generally United States v. Betro*, 115 F.4th 429, 458–60 (6th Cir. 2024) (White, J., concurring) (describing when a Rule 26 report is or is not required). In any event, Schrider's proposed testimony about the forward-looking extent of Tumbleson's emotional distress may well fall on the expert-report side of the Rule 26 divide. But that's a thorny question that the Court need not reach here.

All told, it appears Tumbleson will ask the jury to rely on her treating provider's professional assessment, not its own commonsense, to decide the scope of her emotional injury. That is all well and good, but as explained, it puts her mental condition "in controversy."

### 2. Defendants Have Established Good Cause to Require Tumbleson to Undergo a Rule 35 IME.

Rule 35 also requires the moving party to show "good cause" before a court may order an IME. Fed. R. Civ. P. 35(a). That said, the "good cause" inquiry often merges with the "in controversy" question. *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D. Ga. 2000). At bottom, good cause exists when a movant shows that an IME would "preserve the equal footing of the parties." *Id.* (cleaned up).

Defendants have established that an IME is necessary to effectively defend against Schrider's anticipated testimony—that is, her professional opinion as Tumbleson's treating provider about the emotional injury and aggravation Tumbleson experienced as a result of Defendants' conduct. (Doc. 14, #69–70). Indeed, other courts have ordered IMEs to allow a defendant to challenge the plaintiff's *own* testimony (much less a treating physician's testimony) since a "defendant is not

10

compelled to limit its case to mere cross examination." *Ali v. Wang Lab'ys, Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995). So the Court finds that good cause exists.

## CONCLUSION

Based both on Tumbleson's failure to timely oppose, as well as on the merits, the Court **GRANTS** Motion of Defendants for an FRCP Rule 35 Mental Examination of Plaintiff Andrea Tumbleson (Doc. 14) on the topics of her mental and emotional status before the events described in the Complaint occurred and the mental or emotional harm she allegedly suffered and continues to suffer as a result of those events. The Court further **ORDERS** Defendants to select an appropriate mental health examiner to undertake that examination and submit the name of that provider for the Court's review by October 11, 2024. Finally, the Court **GRANTS** Defendants' Motion to Amend the Case Schedule (Doc. 13) with the Court to decide the remaining deadlines upon the completion of the IME.

**SO ORDERED.**

October 4, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**